# United States Court of Appeals
## For the First Circuit

No. 12-2284

HAROLD FRENCH,

Plaintiff, Appellant,

v.

THE BANK OF NEW YORK MELLON,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Torruella, Dyk[*] and Kayatta,
Circuit Judges.

Eugene F. Sullivan, III, for appellant.
George R. Schneider, with whom Goodwin Procter LLP, Thomas J. Pappas, Jennifer T. Beaudet, and Primmer Piper Eggleston & Cramer PC, were on brief, for appellee.

August 30, 2013

[*]Of the Federal Circuit, sitting by designation.

**KAYATTA, Circuit Judge**. Harold French borrowed money from Countrywide Financial ("Countrywide") and secured the loan with a mortgage on a parcel of land he owned. Having failed to make payments on his loan, French seeks to enjoin foreclosure by Countrywide's assignee, Bank of New York Mellon ("BONY"). French argues that: (1) the description of his property in the mortgage he signed does not satisfy New Hampshire's statute of frauds; and, (2) Countrywide's unilateral addition of a more precise legal description of the property to the copy of the mortgage filed with the registry of deeds was an act of fraud that should bar Countrywide's assignee, BONY, from foreclosing. In ruling on a motion by BONY to dismiss for failure to state a claim upon which relief could be granted, the district court rejected both of French's arguments. We affirm.

## I. Background

Because this case comes to us on an appeal of a dismissal under Rule 12(b)(6), we "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012).

French signed a promissory note with Countrywide in 2005, securing the loan with a mortgage on a parcel of land in Warner, New Hampshire. The mortgage he signed described the property simply as "74 Route 127, Warner, NH, 03278," its street address.

-2-

The parties left blank a page called "Appendix A - Description of the Property." After the closing and without French's knowledge, Countrywide replaced the blank Appendix A with a version containing a description of the property as follows:

> A certain tract of land situated in the Town of Warner, County of Merrimack, State of New Hampshire, being shown as Lot 87 of Plan #17458 recorded July 1, 2005 with the Merrimack County Registry of Deeds.
>
> Excepting therefrom a portion of Lot 87 to be annexed and become part of Lot 86 containing 37,600 square feet more or less as shown on said plan.
>
> Being the same premisses conveyed to me by deed of Carol A. Redus dated January 12, 1999 recorded with the Merrimack County Registry of Deeds in Book 2139, Page 654.

Importantly, French's complaint does not allege that the more precise description in the substitute Appendix A fails to describe precisely the property he agreed to mortgage. Indeed, his complaint describes the land on which BONY is attempting to foreclose under the mortgage containing the substitute Appendix A as "Mr. French's land and residence located at 74 Route 127, Warner, New Hampshire."[1]

---

[1] French's counsel claimed for the first time at oral argument on appeal that the description of the property in substitute Appendix A is not accurate because it omits an easement over the mortgaged property of which French purportedly intended to retain sole ownership. Of course, were that so, the omission would have been apparent on the face of the mortgage actually signed by French. In any event, such a belated allegation by counsel is thrice waived here. Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008) ("Under Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the complaint...."); Welch v.

-3-

Countrywide recorded the mortgage containing the substitute Appendix A with the Merrimack County Register of Deeds. The recorded mortgage, including the substitute Appendix A, was subsequently assigned to the Bank of New York Mellon which also holds the note on French's property. When French was unable to make payments on the mortgage, BONY began judicial foreclosure proceedings. French filed suit to enjoin the foreclosure.

In Count I of his amended complaint, French alleged that the original mortgage was invalid under New Hampshire's statute of frauds, N.H. Rev. Stat. Ann. § 506:1, and that the recorded mortgage was fraudulent and therefore invalid. Either defect, he argued, entitled him to an injunction barring BONY from foreclosing. Counts II and III are derivative of Count I, in that they allege that a foreclosure relying on an invalid mortgage violates, respectively, the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p, and its state analog, N.H. Rev. Stat. Ann. § 358-C:1-4. Finally, in Count IV, French challenges the foreclosure based on an allegation that BONY lacked ownership and possession of the note. BONY moved to dismiss the complaint and the district court granted its motion, except as to Count IV.

---

Ciampa, 542 F.3d 927, 941 n.4 (1st Cir. 2008) (court will not consider facts not raised below where plaintiff could have brought them to the district court's attention); Ortiz v. Gaston Cnty. Dyeing Mach. Co., 277 F.3d 594, 598 (1st Cir. 2002) (failure to raise an argument in briefing on appeal results in waiver).

After discovery, the district court granted summary judgement in BONY's favor on that remaining count.  In pressing this appeal from the final judgment against him, French challenged only the dismissal of his claims concerning his mortgage.

## II. Analysis

If French's allegations are true, Countrywide acted in a sloppy and cavalier manner.  Demonstrating that Countrywide was either sloppy or cavalier in its record generation, however, provides insufficient cause for French to prevail.  To survive a motion to dismiss he must show, on de novo review, that he plausibly pled facts which, if true, state a claim that entitles him to relief.  Mass. Ret. Sys. v. CVS Caremark Corp., 716 F.3d 229, 237 (1st Cir. 2013).  In arguing that he has stated such a claim, French relies on two theories for why BONY's mortgage is invalid:  first, that the mortgage was insufficiently definite to satisfy the New Hampshire statute of frauds; second, that the insertion of the substitute Appendix A invalidated or voided the mortgage held by BONY.  We discuss each theory in turn.

### A. The New Hampshire Statute of Frauds

The parties agree that mortgages are subject to New Hampshire's statute of frauds.  Under New Hampshire law, "[a] memorandum is sufficiently definite to satisfy the statute of frauds if it is 'reasonably certain from the contract itself and the acts of the parties in performance of it what land was

-5-

intended.'" Jesseman v. Aurelio, 106 N.H. 529, 532 (1965) (quoting White v. Poole, 74 N.H. 71 (1906)).  To enforce a contract for the sale of land, "[r]easonable certainty" about what land the parties intended to transact "is all that is demanded and that requirement is fulfilled if the meaning of the contract, as a whole, is intelligible to the court."  Cunningham v. Singer, 111 N.H. 159, 160 (1971).

In Jesseman, the principal defendant agreed to sell to the plaintiff a portion of the defendant's land "at the intersection of Route 11 and 11B...." 106 N.H. at 530.  The written memorandum described the portion in rough and imprecise metes and bounds (e.g. "approximately 300 feet from the Westerly point near the beach to an open sand pit...") and was materially incorrect in some of its estimated measurements.  Id.  After observing the imprecision caused by the absence of "designations frequently used in formal conveyances of real estate," the court found that, because the writing was nevertheless sufficiently certain as to what land the parties intended to transfer, parol evidence could fill in the gaps and resolve the lack of detail and precision in the original document.  Id. at 532-33; see also Cunningham, 111 N.H. at 160.

Similarly, in Gilbert v. Tremblay, 111 A. 314, 315 (N.H. 1920), the Supreme Court of New Hampshire held that a description of a property as "234 Union Ave & lot" was sufficiently definite to

satisfy the statute of frauds where there was only one plot of land corresponding to that address in the town the parties resided in. Here, any imprecision in the written description in the document signed by French and Countrywide is similarly eliminated by unambiguous and undisputed parol evidence: the substitute Appendix A, the accuracy of which French does not challenge. In short, the complaint alleges a written agreement that is, in context, likely more certain than was the description in either <u>Jesseman</u> or <u>Gilbert</u>.

The purpose of the New Hampshire's statute of frauds is to "promote certainty and to protect from frauds and perjuries in land transactions." <u>Weale</u> v. <u>Mass. Gen. Hous. Corp.</u>, 117 N.H. 428, 431 (1977). New Hampshire courts recognize that "a strict enforcement of the statute can produce frustration on the one hand, and unethical conduct on the other" and "equitable considerations" may militate against its application in a particular case. <u>Id.</u> Because the parties agreed before the district court on precisely what the written description of the property in the document they signed means, certainty will be promoted by, and equitable considerations support, enforcing the agreement that both parties intended to enter into--a mortgage covering the land described informally as "74 Route 127, Warner, New Hampshire" as detailed more precisely and accurately in the substitute Appendix A. We therefore agree with the district court that the written agreement,

in light of the surrounding circumstances as alleged in the complaint, was not so imprecise as to be unenforceable under the New Hampshire statute of frauds.[2]

## B. The Effect of the Insertion of Substitute Appendix A

French also advances several unconvincing theories under which Countrywide's unilateral substitution of Appendix A for the original blank version renders the mortgage held by BONY invalid or void. French first suggests that Countrywide committed fraud by making this substitution. In so arguing, French fails to explain how altering a writing in a way that indisputably causes it to better reflect the intentions of the parties constitutes fraud. In New Hampshire, "[t]he essence of fraud is a fraudulent misrepresentation." Jay Edwards, Inc. v. Baker, 130 N.H. 41, 46 (1987). Fraudulent misrepresentation, in turn, must be "made with knowledge of its falsity...." Tessier v. Rockefeller, 162 N.H. 324, 332 (2011); Ed Peters Jewelry Co., Inc. v. C & J Jewelry Co., Inc., 215 F.3d 182, 191 (1st Cir. 2000) ("The hallmarks of fraud

---

[2] French suggests that holding that the mortgage satisfies the statute of frauds will create a cloud on the titles of properties adjoining his. Because this argument is raised for the first time on appeal and is unsupported by relevant citation we treat it as waived. Randall v. Laconia, N.H., 679 F.3d 1, 5 (1st Cir. 2012) (treating argument as waived because of its "perfunctory treatment" in appellant's brief and because it was raised for the first time on appeal). Even if we did consider the argument, French fails to explain how the use of an address in his mortgage creates a cloud on other properties' titles where the recorded form of the mortgage contains an accurate and precise description of the mortgaged property.

-8-

are misrepresentation or deceit."). Here, in contrast, the description of the property in the substitute Appendix A was correct.

French also suggests that allowing BONY to foreclose is a form of equitable relief to which BONY is not entitled because it has unclean hands due to its predecessor's unilateral substitution of Appendix A. His theory that the district court provided equitable relief relies on the district court's statement that "even if the final page of the mortgage document is excised, the description on the document's third page is sufficient to satisfy the statute of frauds." This, French argues, means the district court reformed the mortgage. But we read the district court as using "excised" to mean "ignored," simply saying that even the bare reference to the street address, and not the surrounding acts of the parties, was sufficiently precise to avoid the statute of frauds. Whether that is correct we need not decide.

## III. Conclusion

All three counts of French's complaint ultimately rest on the two theories we have discussed and rejected. Accordingly, we affirm the district court's ruling.

So ordered.